UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LISA DOOD, et al.,

           Plaintiffs,

v.

BIOMET ORTHOPEDICS, L.L.C., et al.,

           Defendants.
_____/

Case No. 1:18-cv-1393

Honorable Hala Y. Jarbou

## AMENDED OPINION

Plaintiffs Lisa Dood and J. Lindsey Dood are spouses. The primary focus of this case relates to Lisa Dood and an allegedly defectively manufactured hip implant device designed and made by Defendants. (*See* Compl., ECF No. 1.) The device in question was surgically implanted in 2006. (Compl. ¶ 29.) In 2012, Lisa Dood began experiencing pain in her right quad (Dood Dep. 68, ECF No. 103-1), which by 2014 had migrated to her right hip. (*Id.* at 87-88.) In April 2014, Lisa Dood underwent revision surgery on her right hip, which entailed removing the implant manufactured by Defendants. (Compl. ¶ 31.) Plaintiffs sued Defendants on July 14, 2016. Lisa Dood brought seven counts (Counts I-VII), all related to the allegedly defective implant, while J. Lindsey Dood brought a single count for loss of consortium (Count VIII). Before this Court is Defendants' motion for summary judgment (ECF No. 100), which argues that Plaintiffs' claims are time-barred. For the reasons set forth below, Defendants' motion will be granted in part and denied in part.

1

## I. FACTUAL BACKGROUND

As mentioned above, the heart of this case is about whether Defendants' hip implant device caused Lisa Dood pain and medical issues that ultimately necessitated the removal of the implant. The basic timeline is undisputed: Dood received the implant at issue in 2006, began to experience pain in her quad in 2012, which migrated to her hip around 2014, leading to the device's removal in 2014, and the Doods filed suit on July 14, 2016. Defendants dispute that the implant in question was defective at all. (*See* Mot. Summ. J. Reply Br. 2 n.1, ECF No. 108.) However, the crux of Defendants' summary judgment motion is *when* the implant caused Lisa Dood harm – assuming the device was in fact defective. As will be discussed in the following section, the relevant statute of limitations is three years from the time that the implant allegedly began to cause Lisa Dood pain. Thus, the timeliness of Plaintiffs' claims turns on whether the implant harmed Lisa Dood before July 14, 2013 (in which case their claims are time-barred), or after (in which case the statute of limitations has not run).

Both parties point to depositions of Lisa Dood (ECF No. 103-1) and one of her doctors, Dr. Karl Roberts (ECF No. 103-3)[1] in addressing the propriety of summary judgment. Defendants also cite Dr. Roberts' medical records for Lisa Dood (ECF No. 101-3), a portion of which is excerpted by Plaintiffs (ECF No. 103-2).

Starting in 2012, Lisa Dood experienced pain in her right quad. (Dood Dep. 69-70.) There were no obvious causes, such as a recent fall. (*Id.*) Dood went to Dr. Kornoelje seeking diagnosis; the doctor referred her to a physical therapist. (*Id.*) The physical therapist believed that the implant surgery itself may have weakened Dood's tendons and muscles, thus causing the pain. (*Id.* at 71.)

---

[1] Defendants' brief supporting their summary judgment motion included relevant excerpts of both depositions as exhibits; the Court cites to Plaintiffs' opposition brief because their exhibits include complete transcripts of the depositions.

Physical therapy seemed to have mixed results initially, but ultimately failed to permanently assuage Dood's pain or identify the pain's source. (*See id.* at 71 ("It would kind of fluctuate just enough for me to think oh, this, and then, boom, the next thing you know, [the pain] would just go back.").) Dr. Kornoelje believed that Dood's pain could be caused by iliopsoas tendinitis or spine issues and made referrals accordingly. (*Id.* at 68.) Shortly before she had her implant removed – though it is not clear exactly when – Dood's pain migrated from her quad to her hip. (*See id.* at 70 ("[The pain] was just in my quad actually. It didn't start in the hip. It eventually went there right before the end, before the [implant was removed], but it was mostly in my quad."); *see also* Dood Medical R. 7, ECF No. 101-3 (Dood told Dr. Roberts that pain had migrated to her hip in April 2014.)

In January 2014, Lisa Dood met with Dr. Roberts regarding the onset of "right hip and groin pain for two years." (Dood Medical R. 6.) Dr. Roberts opined that her pain may be rooted in "iliopsoas tendinitis" but also expressed concern that her problems may stem from the hip implant. (*Id.*) He believed that the surgery to implant the device in 2006 may have been causing pain. (*Id.* at 8.) Dr. Roberts' notes indicate that Lisa Dood felt that her legs were different lengths, another potential cause of her pain, though Dood strongly denied remembering any such discussion. (Dood Dep. 88-89.) After some tests, Dr. Roberts discovered that Dood had slightly elevated levels of cobalt and chromium in her blood, suggesting issues with the implant, though she did not feel that her symptoms matched those that result from elevated metal ion levels. (*See* Roberts Dep. 36-37; Dood Dep. 77.) In April 2014, Dr. Roberts determined that the implant could be causing problems for Dood, though he advised her against surgically removing the device as her condition did not seem sufficiently severe relative to the risk of further complications from surgery. (Dood Medical R. 8.) At some point in 2014, a physical therapist also told Dood that he

3

believed her pain was coming from her hip.  (Dood Dep. 85.)  On April 28, 2014, Dr. Roberts surgically removed Dood's implant.  (Dood Medical R. 11-12.)  Lisa Dood does not currently experience any pain in her hip.  (Dood Dep. 105-106.)

## II. STANDARD

### A. Summary Judgment

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Courts must examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether there is a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P 56(c)) (internal quotations omitted).  A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank. of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party [by a preponderance of the evidence], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *City Serv.*, 391 U.S. at 289).  In considering the facts, the court must draw all inferences in the light most favorable to the nonmoving party.  *Id.*  Summary judgment is not an opportunity for the court to resolve factual disputes.  *Anderson*, 477 U.S. at 249.

### B. Statute of Limitations

If a claim is brought after the statute of limitations has run, the opposing party may assert that the claim is time-barred and it will be dismissed. *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013). Though the party asserting the claim is subject to the statute of limitations, the opposing party bears the burden of proving that the action is time-barred. *Id.*

It is undisputed that Michigan law governs the timeliness of Plaintiff's claims in this case. In Michigan, a claim for personal injury must be brought within three years. Mich. Comp. Laws § 600.5805(2). Such a claim accrues at the time of injury, even if the plaintiff is unaware of the source of that injury. *See Henry v. Dow Chem. Indus. Co.*, 905 N.W.2d 601 (Mich. 2018). Some causes of action accrue according to a "discovery rule," whereby accrual occurs when the plaintiff learned or reasonably should have learned of a claim against a defendant. *See, e.g.*, Mich. Comp. Laws § 600.5833 (breach of warranty claim "accrues at the time the breach of the warranty is discovered or reasonably should have been discovered). However, Michigan has abolished application of the common law discovery rule with respect to personal injury claims, and discovery rules may only be applied when expressly provided for by statute. *Trentadue v. Buckler Lawn Sprinkler*, 738 N.W.2d 664, 672 (Mich. 2007); *see also Henry*, 905 N.W.2d at 601 (plaintiffs' cause of action accrued when toxic chemical was first present in their soil, not when they first learned that their soil may be poisoned).

### III. ANALYSIS

#### A. Counts I, IV-VIII

##### 1. Source of Pain Is a Material Fact

Defendants' motion for summary judgment raises a factual question: assuming that Dood's implant was defective, when did it begin to cause her pain? This question concerns a material fact

because it will "affect the outcome of the suit." *Anderson*, 477 U.S. at 248. All of Plaintiffs' claims are fundamentally based on the alleged failure of the implant and the resulting harm that failure inflicted on Lisa Dood. Thus, their claims rise or fall based on when Dood's cause of action first accrued. No discovery rule is applicable here; accrual occurred at whatever time the implant allegedly began to cause Dood pain. *See Tice v. Zimmer Holdings, Inc.*, No. 1:15-cv-134, 2015 WL 4392985, at *5 (W.D. Mich. July 15, 2015) (cause of action for defective hip implant accrued "when the alleged defects in the Devices harmed" plaintiff). Thus the timing of the device's alleged failure, and therefore the source of Dood's pain before July 14, 2013, is a material fact.

### 2. Dispute as to Source of Pain in 2012 is Genuine

The principal obstacle facing Defendants' motion for summary judgment is the fact the site of Lisa Dood's pain changed over time. In 2012, she began to feel pain in her right quad. (Dood Dep. 69-70.) By around April 2014, the pain had migrated to her right hip. (*See id.* at 70.) Thus, Defendants' task is to demonstrate that a reasonable juror could only conclude that Dood's quad pain and subsequent hip pain stemmed from the same cause. They ultimately fail to meet this burden.

Lisa Dood's medical professionals considered a range of potential causes of her pain. Some were ruled out. (*See* Dood Dep. 68 (doctor told Dood spine could be issue, but specialist concluded spine was not a problem).) Others were not. Both a physical therapist and Dr. Roberts theorized that the 2006 implanting surgery itself could have caused damage leading to Dood's quad pain. (*See* Dood Dep. 71; Dood Medical R. 7.) Dr. Roberts noted "some atrophy of [Dood's] gluteus minimus, which is consistent with" the type of damage that can result from a hip implant surgery. (Dood Medical R. 7.) Medical records also indicate that Dood stated her legs were different lengths and potentially the source of her pain (*id.* at 8), though Dood is adamant that she

6

does not remember saying anything about her legs to Dr. Roberts. (Dood Dep. 88-89; *but see* Dood Medical R. 8 (Dood mentioned legs were different lengths, and Dr. Roberts believed such "symptomatic leg length difference" could contribute to her pain).)

Based on the record before the Court, a jury could reasonably find that factors such as weakened muscles and tendons from surgery or "symptomatic leg length difference" (Dood Medical R. 8.) were causes of Dood's quad pain in 2012 or hip pain in 2014. In light of multiple potential causes, there is a genuine dispute as to when the implant allegedly began to inflict pain on Dood. In other words, a reasonable juror could find that the hip implant did not harm Dood before July 14, 2013, if they found the implant defective at all.

A case from the Michigan Court of Appeals demonstrates why there is a genuine dispute here. In *Schaendorf v. Consumers Energy Co.*, 730 N.W.2d 402 (Mich. Ct. App. 2007), the court denied summary disposition after finding that there was a genuine factual question about when the plaintiffs' cause of action accrued. The plaintiffs sued, claiming that stray voltage attributed to the defendant had resulted in decreased milk production by the plaintiffs' cows. *Id.* at 404. The defendant sought summary disposition in circuit court, claiming that the statute of limitations had expired given that the plaintiffs' cows first lost milk production in 2000, whereas the plaintiff did not file suit until 2004. *Id.* at 407. The circuit court denied summary disposition and the defendant appealed. The court of appeals ruled that summary disposition was inappropriate, finding that

> there was evidence that other factors can also cause milk production to decrease. Moreover, there was evidence that milk production increased again in 2001 and that it was not until 2002 that milk production began a sustained decline and other signs of stray voltage began to appear. More significantly, the submitted evidence showed that defendant's own employees tested plaintiffs' farm in 2002 and 2003 and did not detect a problem with stray voltage.
>
> *Id.*

7

Here, like in *Schaendorf*, the record contains evidence of several conditions that could have caused Dood's pain. Reasonable minds could differ as to whether the same malady caused Dood's pain in both her quad and her hip. Drawing inferences in favor of Plaintiffs, a reasonable juror could conclude that the implant did not fail until 2014 and that some other issue was causing Dood pain in 2012 and 2013. These are factual issues that must be resolved by a jury.

The above conclusion does not result from reliance on the common law discovery rule, which was held abolished by statute in Michigan. *Trentadue*, 661 N.W.2d at 671-72. Defendants are correct to point out that accrual here does not depend on when anyone first thought that Dood's implant could be defective. Plaintiffs' causes of action accrued the moment the implant began to cause Lisa Dood pain. *See Trentadue*, 738 N.W.2d at 670 (claim accrues when wrong is done and "[t]he wrong is done when the plaintiff is harmed rather than when the defendant acted") (quoting *Boyle v. Gen. Motors Corp.*, 661 N.W.2d 557, 560 n.5 (Mich. 2003) (internal quotations omitted). That does not relieve Defendants of the burden of demonstrating that no reasonable juror could find that Dood's problems with her implant began *after* July 14, 2013, i.e., within the statute of limitations. *See Anderson*, 447 U.S. at 256 ("[M]ovant has burden of showing that there is no genuine issue of fact."). Defendants have failed to meet that burden. Summary judgment on the basis that Plaintiffs' claims are time-barred is therefore inappropriate.

### 3. Accrual of Breach of Warranty Claims

The parties dispute which statute of limitations governs Plaintiffs' breach of express and implied warranty claims. Plaintiffs argue that their breach of warranty claims are governed by the discovery rule provided in Mich. Comp. Laws §600.5833, while Defendants counter that all claims

are subject to the strict time-of-injury accrual under Mich. Comp. Laws § 600.5805(2) because this case is fundamentally about alleged tortious conduct. It is unnecessary for the Court to resolve this issue now. Even accepting Defendants' argument, which would set accrual earlier than would occur under the discovery rule, the issue of accrual would remain unresolved. The timing of the implant's alleged failure has not yet been established. Thus, at this moment, it is irrelevant whether section 600.5833 or 600.5805 would ultimately apply to the breach of warranty claims. Parties may renew this argument when the issue is ripe for resolution.

### B. Count II Does not Toll Accrual

Defendants are correct that Plaintiffs' allegations of fraudulent concealment cannot save any claims that would otherwise be time-barred. Mich. Comp. Laws § 600.5855 tolls the accrual of a cause of action against any party "who is or may be liable for any claim" and that "fraudulently conceals the existence of the claim." However, any cause of action tolled by the statute must be brought "within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim." *Id.*

The absolute latest that Plaintiffs' claims could possibly be tolled to is April 2014, when Dr. Roberts began to suspect that the implant was defective. (Dood Medical R. 8.) Yet Plaintiffs did not sue until July 2016, more than two years later and thus past the period of tolling allowed by section 600.5855. Plaintiffs' allegations of fraudulent concealment will not save any claim that is ultimately found to be time-barred.

### C. Count III Is Time-Barred

Plaintiffs' claim of fraudulent misrepresentation is time-barred. A claim for fraudulent misrepresentation accrues at the time of the alleged misrepresentation; the discovery rule does not apply. *Boyle*, 661 N.W.2d at 569. Here, Plaintiffs allege that Lisa Dood "reasonably relied upon

9

Defendants' deceptive, inaccurate, and fraudulent misrepresentations," implying that these misrepresentations induced Dood to select Defendants' implant as the solution to her hip problems in 2006.  (Compl. ¶ 57.)  Therefore, Dood's claim for fraudulent misrepresentation accrued in 2006.  Although it may be "unclear whether the specific statute of limitations for fraud cases is subsumed by the broadly applicable three-year products liability statute of limitations," the Court need not decide which of two potential statutes of limitations apply here.  *Good v. Howmedia Osteonics Corp.*, Nos. 15-cv-10133, 15-cv-10134, 2015 WL 8175256, at *4 (E.D. Mich. Dec. 8, 2015).  Whether the appropriate statute of limitations is three years, under Mich. Comp. Laws § 600.5805(2), or six years, under Mich. Comp. Laws § 600.5813, approximately ten years elapsed between the alleged misrepresentations and the commencement of this suit.  Count III is time-barred.

## IV. CONCLUSION

For the reasons stated, Defendants' motion for summary judgment (ECF No. 100) will be granted in part and denied in part.  Counts II and III will be dismissed as time-barred.  Summary judgment will not be granted with respect to Counts I and IV-VIII as there remains a genuine issue of when the implant allegedly failed.  An order will enter in accordance with this Opinion.

Opinion amended to correct that only an order will enter in accordance with this Opinion.

Dated:  November 2, 2020                         /s/ Hala Y. Jarbou
                                                 HALA Y. JARBOU
                                                 UNITED STATES DISTRICT JUDGE